IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT GABRIEL, et al.,              ) | |
|                                                             ) | |
|       Plaintiffs,                               ) | |
|                                                             ) | |
| vs.                                                    ) | CIVIL ACTION NO. 14-00358-CG-B |
|                                                             ) | |
| CHARTIS SPECIALTY                  ) | |
| INSURANCE CO., et al.,              ) | |
|                                                             ) | |
|       Defendants.                           ) | |

**ORDER**

This matter is before the Court on the Motion for Summary Judgment (Doc. 40) and Brief in Support (Doc. 41), filed by Chartis Specialty Insurance Company ("Defendant"), the response (Doc. 47) filed by Joseph Habshey, Mary Shanklin, Carl Most, John Cabral, RMG International, Inc., AZMACOMP, Inc. (collectively, "Plaintiffs"), and Veritrust Financial, LLC ("Veritrust"), and Defendant's reply (Doc. 48). For the reasons set forth herein, Defendant's motion for summary judgment is due to be **GRANTED**.

**I. BACKGROUND**

This case involves a complicated set of facts and procedural history, including several party changes, that the Court previously set out in its Order on Motions to Remand. (Doc. 30). In order to avoid any potential confusion, the Court will not rehash those facts here but will instead set forth only the history necessary to state the posture of the current action.

Plaintiffs sued Michael J. Howard and his affiliated companies (collectively,

"Howard") in the Circuit Court of Dallas County, Alabama, asserting causes of action related to viatical settlements sold by Howard to Plaintiffs. (Doc. 1-2, pp. 3-4). After Plaintiffs provided Howard with funds to maintain the premiums on the viatical settlements, Howard allegedly used the money to pay premiums on other insurance policies purchased by other clients, causing the viatical settlements to lapse. (Doc. 1-2, p. 7; Doc. 47, p. 3). Plaintiffs also sued Veritrust, apparently on the theory that Howard sold the settlements while acting as an agent for Veritrust, a securities broker-dealer. (Doc. 1, p. 2). Veritrust had purchased a Securities Broker/Dealer's Professional Liability Insurance policy issued by Defendant, but Defendant informed Veritrust that it was not covered by the policy. (Doc. 1-2, p. 235). Thus, Defendant did not defend Veritrust in the suit.

Plaintiffs and Veritrust agreed to settle all state court claims for $5.1 million. Id. at 228. Plaintiffs then amended their complaint to add Defendant as a party in an attempt to garnish proceeds from the insurance policy issued to Veritrust, pursuant to Section 27-23-2 of the Alabama Code. Id. at 229. Veritrust levied claims of bad faith and breach of contract against Defendant. Id. at 235. Defendant removed the action to this Court on grounds of diversity jurisdiction. (Doc. 1, p. 7).

## II. ANALYSIS

### A. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) instructs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial

2

court's mission is to "determine whether there is a genuine issue for trial" and not to "weigh the evidence." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The burden is on the moving party to show that there is no genuine dispute as to any material fact. Id. at 256. In conducting its summary judgment analysis, the Court must construe all evidence "in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

After the movant meets its burden, the burden shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the nonmoving party fails to do so, the "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Further, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted). There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Choice of Law and Contract Principles

In an action based on diversity, the Court applies "the substantive law of the forum state." Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir.

1995). Absent a choice-of-law provision, "Alabama follows the lex loci contractus rule in determining which state's law applies in a contract dispute." Cherokee Ins. Co. v. Sanches, 975 So. 2d 287, 292 (Ala. 2007). A court follows "the law of the state where the contract was formed" unless that state's law "is contrary to the forum state's fundamental public policy." Stovall v. Universal Constr. Co., 893 So. 2d 1090, 1102 (Ala. 2004). When analyzing an insurance policy, a court will administer the law of the state where the policy was issued and delivered. See Cherokee Ins. Co., 975 So. 2d at 293.

It does not appear that the parties included a choice-of-law provision in the insurance policy. Defendant argues that Texas law applies because Veritrust "is a Texas Limited Liability Company with its principle place of business in Texas, and its members are residents of Texas." (Doc. 41, p. 17). The Court recognized the Texan citizenship of Veritrust in its Order on Motions to Remand. (Doc. 30, p. 7). Plaintiffs and Veritrust are silent to the contention that Texas law controls. The Court will apply Texas law in interpreting the contract.

The provisions of a contract "each must be considered in the context of the instrument as a whole." Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc., 473 S.W.3d 296, 305 (Tex. 2015). A court must "give words their plain, common, or generally accepted meaning unless the contract shows that the parties used words in a technical or different sense." Id. A contract is ambiguous when it is "subject to two or more reasonable interpretations," which creates "a fact issue regarding the parties' intent." Id. A "contract may be read in light of the

4

circumstances surrounding its execution to determine whether an ambiguity exists" unless "the instrument involved, by its terms, plainly and clearly discloses the intention of the parties, or is so worded that it is not fairly susceptible of more than one legal meaning or construction." Id. (quoting Sun Oil Co. v. Madeley, 626 S.W.2d 726, 732 (Tex. 1981)) (internal quotation marks omitted). Insurance policies are contracts and thus interpreted accordingly. JAW The Pointe, L.L.C. v. Lexington Ins. Co., 460 S.W.3d 597, 603 (Tex. 2015).

The insured party initially "has the burden of establishing coverage under the terms of the policy." Id. (quoting Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London, 327 S.W.3d 118, 124 (Tex. 2010)) (internal quotation marks omitted). The burden then shifts to the insurer "to plead and prove that the loss falls within an exclusion to the policy's coverage." Id. If an exclusion exists, "the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." Id. (quoting Gilbert, 327 S.W.3d at 124) (internal quotation marks omitted).

Veritrust brought claims of breach of contract and bad faith against Defendant. (Doc. 1-2, p. 235). The latter depends on the outcome of the former, as typically there can be no finding of bad faith if the contract has not been breached. See Liberty Nat'l Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996). For the reasons set forth below, the Court finds that Defendant did not breach the contract and therefore no bad faith analysis is necessary.

### C. Coverage

### 1. Residence

Defendant first contends that coverage is not available to Veritrust because it is domiciled and has its principle place of business in Texas. (Doc. 41, p. 19). An endorsement to the policy states, "[C]overage shall be provided solely with respect to any Insured(s) that are domiciled or maintain a primary place of business in . . . Delaware." (Doc. 40-21, p. 60). In addition to Veritrust's Texan citizenship, Howard is a resident of Alabama. (Doc. 30, p. 7). Veritrust counters that a separate insurance policy, discussed below, does not have this restriction and should have been considered. (Doc. 47, p. 2). Veritrust apparently concedes that the policy issued by Defendant does not cover Veritrust or Howard by virtue of the residence restriction, stating that the policy "contains an endorsement limiting coverage only to Delaware residents." Id. at 6. Thus, the Court could grant summary judgment to Defendant based on this endorsement alone.

### 2. Professional Services

Defendant next argues that Veritrust cannot establish coverage because, while the policy covers "professional services," the sale and maintenance of viatical settlements is not an approved professional service. (Doc. 41, pp. 19-20). Defendant points to the policy's definition of "Professional Services" as those "rendered in connection with an Approved Activity for or on the behalf of a customer or client of the Broker/Dealer pursuant to a written agreement between the Broker/Dealer and the customer or client," which is followed by a list of services. (Doc. 40-21, p. 16).

The policy goes on to define "Approved Activity":

> (a) "Approved Activity" means a service or activity performed by the Registered Representative on behalf of the Broker/Dealer which:
>
> > (1) has been approved in writing by the Broker/Dealer to be performed by the Registered Representative, and is
> >
> > (2) in connection with the purchase or sale of a specific security, annuity or insurance product which has been approved in writing by the Broker/Dealer to be transacted through the Registered Representative, and for which
> >
> > (3) the Registered Representative has obtained all licenses required by the Broker/Dealer or applicable law or regulation.

(Doc. 40-21, p. 34). Defendant argues that the sale and servicing of the viatical settlements is not covered as an approved activity. (Doc. 41, p. 20). In his deposition, Veritrust's chief executive officer testified that he informed Howard of the company's prohibition of viatical transactions and that Howard did not disclose his ongoing viatical business at that time. (Doc. 40-15, pp. 9-10, 18-20). According to the officer, Veritrust has "never been involved in that business." Id. at 10. When Veritrust discovered that Howard was actively involved in the viatical trade, they terminated his employment. (Doc. 40-15, p. 20; Doc. 40-19, p. 2). Further, the cease-and-desist orders issued to Howard by the Alabama Securities Commission demonstrate that Howard did not have the appropriate licenses to broker viatical transactions. (Docs. 40-11, 40-13). Finally, none of Howard's viatical customers involved in the state court lawsuit were clients of Veritrust. (Doc. 40-15, pp. 6, 9, 14).

Veritrust responds by offering the novel argument that "an agreement to ensure that insurance premium payments are timely made is distinct and separate

from the sale of the viatical." (Doc. 47, p. 4). Veritrust posits that the maintenance of premium payments is an administrative activity clearly covered by the policy. Id. at 7.

It is true that an endorsement to the policy added "the separation of insurance premiums and remittance of the insurance premiums to the various product sponsors as per the investor's selected allocation" to the policy's definition of "Professional Services." (Doc. 40-21, p. 57). However, this endorsement did not remove the Approved Activity requirements. The endorsement essentially changed the definition of "Professional Services" to read like the following:

> (k) "Professional Services" means the following services if rendered in connection with an Approved Activity for or on the behalf of a customer or client of the Broker/Dealer pursuant to a written agreement between the Broker/Dealer and the customer or client:
>
> . . .
>
>> (9) the separation of insurance premiums and remittance of the insurance premiums to the various product sponsors as per the investor's selected allocation; . . . .

Id. at 16, 57 (emphasis added). The endorsement left the Approved Activity conditions in place. Veritrust has not offered any arguments or evidence countering Defendant's Approved Activity averments, so Veritrust's position regarding Professional Services is unavailing. Defendant is entitled to summary judgment because the state court claims related to activities that were not approved according to the policy.

**D. Viatical Exclusion**

Finally, Defendant points to an exclusion within the policy that states, "The Insurer shall not be liable for Loss in connection with any Claim made against an Insured . . . m) alleging, arising out of, based upon or attributable to the purchase or sale of (or failure to purchase or sell) any of the following, or any advice in connection therewith: . . . 7) viatical products including viatical settlement and viatical contracts . . . ." Id. at 17-19, 32. Defendant notes that Plaintiffs' complaint against Veritrust in the underlying state suit alleged, "This action arises out of, among other things, agreements between the parties over viatical investments for the Plaintiffs and the payment and application of premiums thereto to sustain the underlying life insurance policies." (Doc. 40-4, p. 3) (emphasis added). As mentioned above, Veritrust counters that the handling of the viatical premiums is separate from selling viatical settlements and therefore an administrative activity covered by the policy. (Doc. 47, p. 7). Veritrust relies on a case from the Ohio Court of Appeals, Ohio's intermediate appellate court, and points to the following paragraph from the opinion in particular:

> In George, the profitability of the investment was impacted by the operation of the enterprise; the investor's profit depended on Bonanza's use of the investor's outlay of capital to train personnel and market the product. Investor profit would theoretically increase as a result of Bonanza's efforts. By contrast, the only variable that can impact the profitability of the viatical settlements at issue is the timing of the death of the insured. To the extent that Glick's investment outlay paid for the fees and commissions of appellants and the viatical company, and for the premiums to maintain the insurance policies, Glick was merely paying for administrative services and, by purchasing interests on Glick's behalf and paying premiums, appellants and/or Liberte Capital Group were merely fulfilling their reciprocal obligations under

9

> their agreement with Glick. We conclude that a viatical settlement promoter's efforts to perform the services it promised does not constitute the risks of the enterprise under George.

Glick v. Sokol, 777 N.E.2d 315, 319 (Ohio Ct. App. 2002).

This case is distinguishable from Glick. The issue before the Glick Court was whether viatical settlements were securities under Ohio law. See id. at 317. That inquiry is starkly different than the straightforward contract interpretation analysis in this case. Veritrust also directs the Court's attention to the Consent Order issued to Howard by the Alabama Securities Commission in which the Commission allowed Howard to continue paying the premiums on the viatical settlements even though he did not have the proper licenses to sell viatical settlements. (Doc. 47-3, pp. 4-5). Veritrust claims this is further proof that maintaining viatical premiums is an administrative function distinct from selling viatical settlements. (Doc. 47, p. 8). However, as with the Glick case, the Consent Order sheds light only on whether the paying of the premiums might be governed by Alabama securities law and has no bearing on the interpretation of the viatical exclusion within the insurance policy, which is a matter of contract.

"Arise" is defined as "[t]o originate; to stem (from)" and "[t]o result (from)." Black's Law Dictionary 115 (8th ed. 2004). In a recent contract dispute case, the Supreme Court of Texas recognized that it had equated the "arising out of" language with "but for" causation when reviewing insurance policies in previous cases, although the Court implied that "but for" causation was not appropriate when the standard "would produce a result that is illogical, unreasonable, and inconsistent with the parties' expressed intent." Plains Exploration, 473 S.W.3d at

10

308-09. The Supreme Court of Texas has also held that, when "a contract of insurance is susceptible of more than one reasonable interpretation, . . . [t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Nat'l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991). This Court finds that the viatical exclusion provision is clearly unambiguous and not subject to multiple reasonable interpretations. There is simply no way to divorce viatical premium payments from "viatical products" without completely ignoring the "arising out of" language. The Court is reluctant to apply some complicated securities scheme from Ohio when logic and Texas contract law provide the clear route. Thus, even if Veritrust could somehow show that it is covered by the policy, the granting of Defendant's motion for summary judgment is warranted based on this exclusion.

## E. Veritrust's Counterargument

Other than Veritrust's weak parries of some of Defendant's arguments and silence on others, Veritrust claims that an "AIG contact person" failed to consider a policy issued by Lexington Insurance Company in conjunction with the policy issued by Defendant. (Doc. 47, pp. 1-2, 6-7). In support, Veritrust submitted correspondence between its attorneys and the contact person. (Doc. 47-2, pp. 1-26). The Lexington policy would allegedly provide coverage in this instance. (Doc. 47, pp. 6-7). Since Defendant and Lexington Insurance Company are both owned by

11

American International Group, Inc. ("AIG"), Veritrust argues that the Court should refuse to apply the coverage requirements and exclusions of the policy issued by Defendant based on this "bad faith." Id. This is the first time the Court has been made aware of AIG's alleged refusal to consider a policy issued by Lexington Insurance Company.

First, it is important to note that there is some confusion as to what party Plaintiffs and Veritrust sued, at least upon first glance at the pleadings. The amended complaint and other documents list Defendant as "AIG Property Casualty Company a/k/a American International Group, Inc., f/k/a Chartis Specialty Insurance Company." (Doc. 1-1, p. 4; Doc. 1-2, p. 235). Defendant has repeatedly asserted in its answers and other filings that "Chartis Specialty is incorrectly named in the Complaint as AIG Property Casualty Company a/k/a American International Group, Inc., f/k/a Chartis Specialty Insurance Company." (Doc. 6, p. 1; Doc. 7, p. 1; Doc. 41, p. 3). Neither Plaintiffs nor Veritrust has ever taken issue with this characterization by Defendant. Further, Defendant contends that "American International Group, Inc. and AIG Property Casualty Company are financial holding companies . . . [that] did not issue an insurance policy to Veritrust." (Doc. 41, p. 3). The policy in question lists the insurer as "Chartis Specialty Insurance Company." (Doc. 40-21, p. 10). In its response, Veritrust submitted a "Report on Examination of the Chartis Select Insurance Company" (not to be confused with Defendant, Chartis Specialty Insurance Company) issued by the Delaware Department of Insurance. (Doc. 47-1, p. 3) (emphasis added). The report provides a

partial organizational structure of AIG, which shows that Chartis Specialty Insurance Company is distinct from Lexington Insurance Company and a subsidiary multiple times removed of American International Group, Inc. Id. at 13-14. Veritrust's response recognizes this hierarchy and appears to concede that Defendant, and not one of the AIG companies mentioned in the complaint, issued the Chartis policy. (Doc. 47, p. 6). It is clear that Plaintiffs and Veritrust intended to sue Defendant and not the AIG companies. Therefore, the refusal of the AIG employee to consider the Lexington policy has no bearing on Defendant's liability. This allegation might be pertinent if AIG and Lexington Insurance Company were parties in this case, but they are not. The Court is unaware of any law that could be applied to hold Defendant liable for another insurance company's denial of coverage under an insurance policy issued by that company.

Even if the complaint could somehow be read to have named the AIG companies as defendants, Veritrust has not put forth any agency, piercing of the veil, or other legal theory that would allow the Court to impute any potential liability of Defendant or Lexington Insurance Company to the AIG companies. In fact, Veritrust has not offered any evidence to support its position that it submitted a claim under the Lexington policy. While Veritrust's counsel mentioned Lexington in several emails (Doc. 47-2, pp. 6, 17, 22), the "AIG contact person" explicitly replied, "If you assert a right to coverage under another policy [other than the Chartis policy] issued by any other member company of AIG, please submit notice pursuant to the notice provisions contained in that policy." Id. at 11. Veritrust has

not shown that it observed this formality for the Lexington policy. Furthermore, while Veritrust claims that the Lexington policy would provide coverage, it offers no evidence (e.g., the policy itself) supporting this argument. Veritrust's contention that an AIG employee wrongfully refused to consider the Lexington policy which would have provided coverage is merely a bald assertion unsupported by evidence and thus not sufficient to prevent the granting of Defendant's motion for summary judgment. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

## CONCLUSION

Defendant's motion for summary judgment is hereby **GRANTED** on Veritrust's claims. Because Plaintiffs' claims depend upon Defendant's responsibility to Veritrust, see Ala. Code 27-23-2 (LexisNexis 2014), Defendant's motion for summary judgment is **GRANTED** on those claims as well.

**DONE** and **ORDERED** this 5th day of April, 2016.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE